STATE of Minnesota, Respondent,

v.

Jack Harold SCHAFFER, Appellant.

No. C2–85–942.

Court of Appeals of Minnesota.

Dec. 17, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Bruce Gross, Cottonwood County Atty., Daniel M. McDonald, Asst. County Atty., Windom, for respondent.

Terry L. Bloch, Windom, for appellant.

Considered and decided by POPOVICH, C.J., and RANDALL, and CRIPPEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant Jack Schaffer was convicted of two traffic offenses: careless driving, Minn.Stat. § 169.13, subd. 2 (1984) and illegal stopping, standing or parking, Minn. Stat. § 169.32 (1984). On appeal he claims evidentiary rulings were erroneous requiring a new trial. We affirm.

## FACTS

Appellant was custom combining with his brother on October 21, 1984. To unload corn from his tractor and grain cart into a truck parked on the side of graveled County Road 14 in Windom, Minnesota, he parked them on the road parallel to the truck. This left approximately five feet from one side of the tractor for a vehicle to pass. Appellant did not have any flares and did not otherwise warn on-coming vehicles about the situation. Around 8:30 p.m., while it was dark, a car approached,

driven by Robin Medill, with two passengers. Medill saw headlights on the left-hand side of the road, apparently from the truck, but saw no other lights until she was upon the grain cart. She crashed into it with the left side of her car causing severe damage to her vehicle. In addition, Medill was unconscious and in intensive care for two days; one of her passengers suffered numerous cuts, bruises and bumps.

The next day, Minnesota State Trooper Mike Hentges and Cottonwood Deputy Sheriff William Litfin investigated the scene. Hentges matched the damage of the grain cart to the car as well as the tire prints of the cart to the bumper of the car. He then examined a 12 to 15 inch gouge in the road from the car frame and drew a diagram depicting the location of the vehicles based on his reconstruction of the accident. Hentges had been with the Minnesota State Patrol for four years and had attended a 60 to 70 hour accident investigation course. He also completed a two week accident reconstruction course and had reconstructed four to five accidents.

Appellant was charged with careless driving and illegal stopping, standing, or parking. During trial appellant introduced three photographs of the scene. Two were admitted; the last one, purportedly offered to show the surface of the roadway, was excluded as it depicted the tractor, truck, and another vehicle on the side. The prosecutor's objection that the photo was misleading and inaccurate was sustained.

Appellant was convicted by a jury on both charges and sentenced to a $200 fine and a $20 assessment for careless driving. No sentence was imposed for the other violation.

### ISSUES

1. Did the trial court err in excluding appellant's photograph of the roadway surface?

2. Did the trial court err in allowing the state trooper to testify as an accident reconstruction expert?

3. Did the trial court err in admitting a diagram of the location of the vehicles prepared by the reconstruction expert?

### ANALYSIS

■ 1. Admission of photographs is a matter left to the discretion of the trial court. *State v. Alowonle,* 356 N.W.2d 385, 387 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Jan. 14, 1985). Here the photo sought to be admitted was not a fair and accurate depiction of the accident scene but was misleading and prejudicial. The court had admitted two other defense exhibits of photos depicting the accident scene. Finally, there were numerous photos admitted which showed the roadway surface, so the photo was cumulative. No abuse of discretion under Minn.R.Evid. 403 has been shown.

■ 2. Whether Trooper Hentges was qualified to give his expert opinion regarding the point of impact and the location of the vehicles was a determination "peculiar within the province of the trial judge, whose ruling will not be reversed unless it is based on an erroneous view of the law or clearly not justified by the evidence." *In re Welfare of M.B.W.,* 364 N.W.2d 491, 494 (Minn.Ct.App.1985) (quoting *Cornfeldt v. Tongen,* 262 N.W.2d 684, 692 (Minn.1977)). Hentges did not have to a have a certificate as an accident reconstruction expert to give his opinion as appellant contends.

■ 3. The diagram prepared by Trooper Hentges showing the location of the vehicles was not offered to give the exact location of the vehicles but was admitted for reference purposes to follow Hentges' testimony depicting the reconstruction process.

Appellant claims the evidence was inadmissible, citing *Carmody v. Aho,* 251 Minn. 19, 86 N.W.2d 692 (1957), where the supreme court held the trial court committed reversible error to permit an expert hired by one side to opine as to the lane of traffic in which the collision occurred. The continuing vitality of *Carmody* as precedent was substantially weakened in *State v.*

*Dewey,* 272 N.W.2d 355 (Minn.1978). In *Dewey* the supreme court stated:

The approach of the *Carmody* case has been followed by this court in numerous cases since then: * * * (citations omitted).

A parallel line of cases, dealing with expert testimony concerning only the speed of automobiles involved in accidents, has taken a slightly different approach, holding that although opinion testimony of lay eyewitnesses is preferred, a qualified expert may give his opinion on speed, based on skid marks, if lay testimony is nonexistent or of little aid to the jury. *See, e.g., LeMieux v. Bishop,* 296 Minn. 372, 209 N.W.2d 379 (1973); *Grapentin v. Harvey,* 262 Minn. 222, 114 N.W.2d 578 (1962).

Recently, in *Dunshee v. Douglas,* 255 N.W.2d 42 (Minn.1977), we at least implied that the same basic rule should govern all kinds of expert accident reconstruction testimony, and that that rule is the one which has been followed with respect to expert testimony concerning speed.

The trend of the cases in other jurisdictions is to leave the matter to the trial court's discretion, allowing the trial court to admit the accident reconstruction testimony if there is a need for the evidence and if the expert is qualified. Most importantly, this is also the approach contemplated by our recently adopted Rules of Evidence. *See,* Rules 702–704 and 3 Weinstein's Evidence, United States Rules, § 702(01).

*Id.* at 357.

The opinion given and the diagram used was based on sufficient factual data to assure a reasonably complete and accurate reconstruction of the accident without speculation and it did assist the trier of fact. *See LeMieux v. Bishop,* 296 Minn. 372, 378, 209 N.W.2d 379, 383 (1973). In fact, Hentges' testimony was corroborated by appellant's admission that the vehicles were "pretty well positioned" in Hentges' diagram. Appellant testified he believed it was safe for a car to pass around him.

Appellant's exhibit 18, which appellant testified showed the truck and tractor parked in a similar location as at the accident, is almost identical to the diagram. Admission of the diagram was not prejudicial error.

### DECISION

Appellant's convictions for careless driving and illegal stopping, standing or parking are affirmed.

Affirmed.